**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nationwide General Insurance Company and Nationwide Mutual Insurance Company,<br><br>Plaintiffs,<br><br>v.<br><br>Heather Lennon and Atkins & Lennon Libations LLC,<br><br>Defendants. | No. CV-23-02231-PHX-KML<br><br>**ORDER** |

Plaintiffs Nationwide General Insurance Company and Nationwide Mutual Insurance Company ("Nationwide") issued insurance policies for defendants Atkins & Lennon Libations ("ALL") and Heather Lennon (collectively, "defendants") for their operation of the event venue Warehouse 215. The registrant of the Warehouse 215 trade name, Bentley Projects, LLC, sued defendants in state court alleging the right to use the name was not conveyed when defendants purchased the venue. Nationwide seeks a declaratory judgment that it has no duty to defend or indemnify defendants in their state-court suit with Bentley and moved for summary judgment on that question.

**I.    Background**

Warehouse 215 is an event venue located at 215 East Grant Avenue in Phoenix, Arizona. David J. Calverley and the Bentley Dillard Family Trust (the "Trust") registered the trade name "Warehouse 215" with the Arizona Secretary of State through their LLC Bentley Projects. (Doc. 22-1 at 3.) Before November 2021, Calverley and the Trust owned

1  and managed Warehouse 215 through two other LLCs, 215 East Grant LLC and BDDC
2  Investments, LLC. (Doc. 22-1 at 4.)

3  On November 16, 2021, defendants purchased the venue along with certain
4  intangible property, such as the website warehouse215.com and goodwill from 215 East
5  Grant LLC and BDDC Investments. (Doc. 29-1 at 3, 76.) Bentley alleges it also offered to
6  sell the rights to use the Warehouse 215 trade name but defendants declined to buy them.
7  (Doc. 22-1 at 4.)

8  After the purchase, defendants used the name Warehouse 215 in conducting their
9  business at the venue, including when applying for liquor licenses and identifying the
10 venue to media outlets. (Doc. 22-1 at 5.) Bentley alleges these uses are unauthorized and
11 accordingly filed a complaint against defendants in Maricopa County Superior Court for
12 unauthorized use of trade name under Arizona law, unfair competition and false
13 designation of origin under the Lanham Act, and common-law trademark infringement and
14 unfair competition. (Doc. 22-1 at 5–8.)

15 At all relevant times, defendants were insured through Nationwide. Various policies
16 covered defendants' operations at the event venue. (Doc. 22 at 1.) These policies provided
17 coverage up to specified limits for personal or advertising injury. (Docs. 22-2–22-7.) But
18 each policy excluded coverage for certain personal and advertising injuries, including
19 those:

> i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**
>
> Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."
>
> HOWEVER, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

28 (Docs. 22-2–22-7.) Believing coverage existed, defendants demanded Nationwide defend

- 2 -

and indemnify them in Bentley's state-court lawsuit. (Doc. 1 at 9.) Nationwide undertook the defense subject to a reservation of rights but also filed a complaint in this court seeking declaratory judgment that it has no obligation to defend or indemnify defendants for Bentley's claims. (Doc. 21.) The parties agreed no discovery was needed before Nationwide filed for summary judgment. (Doc. 18 at 4–5.)

**II.  Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movants bear the burden of presenting the basis for their motion and identifying evidence they believe demonstrates the absence of a genuine issue of material fact. *Id*. at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

**III.  Discussion**

The motion for summary judgment requires interpretation of the insurance contract. Under Arizona law, "[t]he interpretation of an insurance contract is a question of law to be determined by the Court." *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982). Defendants bear the burden of showing insurance coverage. *Keggi v. Northbrook Prop. & Cas. Ins. Co*., 13 P.3d 785, 788 (Ariz. Ct. App. 2000). If they meet that burden, Nationwide must then show an applicable policy exclusion. *Id*. The burden then shifts back to defendants to prove an exception to an exclusion. *Hudnell v. Allstate Ins. Co*., 945 P.2d 363, 365 (Ariz. Ct. App. 1997).

a. **Coverage Exclusions**

The relevant portion of the policies provide coverage for "damages because of 'personal and advertising injury'" that "the insured becomes legally obligated to pay." (Doc. 22-2 at 18.) Nationwide argues it is exempted from defending or indemnifying

defendants because the policies exclude coverage for advertising offenses "arising out of" infringement of copyright, patent, trademark, trade secret or other intellectual property rights. (Doc. 21 at 7.) Arizona law construes the phrase "arising out of" broadly and does not require traditional proximate cause. *Regal Homes, Inc. v. CNA Ins.*, 171 P.3d 610, 614-15 (Ariz. Ct. App. 2007).

Here, Bentley alleges in state court that defendants have held the event venue out as "Warehouse 215" so frequently that the public has confused its business with defendants'. It claims this constitutes unauthorized use of a trade name under Arizona law, unfair competition and false designation of origin under the Lanham Act, and common law trademark infringement and unfair competition." (Doc. 22-1 at 6–8.) In support of these claims, Bentley cites press coverage from a political event identifying the venue as "Warehouse 215"; a Warehouse 215 entry with the Better Business Bureau of Phoenix identifying the company as doing business at 215 East Grant; its erroneous receipt of communications from the Phoenix Fire Department, a liquor vendor, Nationwide, and US Card Solutions AZ intended for defendants; and defendants' application for liquor licenses under the "Business Name" of "Warehouse 215." (Doc. 22-1 at 5–6.)

Bentley's claims allege intellectual property infringements based on defendants' use of its registered trade name. *See, e.g., Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010); *PH4 Corp. v. Sun City Real Est., LLC*, No. CV 08-0501-PHX-SMM, 2008 WL 5101340, at *3 (D. Ariz. Dec. 1, 2008); *see also Accuride Intern., Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–35 (9th Cir. 1989) (collecting cases and noting "the same broad standards of protection apply to trademarks and trade names"). Construing the "arising out of" language broadly as Arizona law requires, Bentley's claims are at a minimum "related" to an alleged intellectual property infringement and therefore satisfy the nexus test. *Regal Homes*, at 171 P.3d at 615.

Defendants argue the policy exclusion for infringement of copyright, patent, trademark, trade secret or other intellectual property rights does not apply because the exclusion carves out "the use of another's advertising idea in your 'advertisement'" from

"other intellectual property rights." (Doc. 28 at 8.) But defendants do not explain how their alleged uses of "Warehouse 215" constituted "advertising ideas" or "advertisements." They characterize Bentley's allegations in the underlying litigation as "using the name 'Warehouse 215' in advertisements and promotions for events" but do not point to any specific advertisements. (*See* Doc. 28 at 7.) The court also has found none: Bentley alleges instances of consumer and media confusion around the identity of "Warehouse 215," but discusses no advertisements. (*See* Doc. 22-1 at 4.) Accordingly, defendants have not met their burden of showing the "advertising idea" exception to the exclusion applies.

Defendants also argue the intellectual property/trademark exclusion does not apply because Bentley mischaracterized its trade name as a trademark in the underlying litigation. (Doc. 28 at 11.) But even if the claims asserted against defendants are for trade name violations, claims arising from an alleged infringement of "other intellectual property rights" are still excluded from coverage. (Doc. 22 at 5–7.) The policies do not define "other intellectual property rights" but courts regularly construe this term to include trade name. *See, e.g.*, *Keating Dental Arts, Inc. v. Hartford Cas. Ins. Co.*, 627 F. App'x 671, 671 (9th Cir. 2015); *In re Garno*, No. 07-BK-02480-SSC, 2010 WL 1254919, at *4 (Bankr. D. Ariz. Mar. 24, 2010). And defendants do not argue trade name is not another "intellectual property right," only that it is distinct from trademark. (Doc. 28 at 11.)

Defendants alternatively attempt to invoke the exception to the policies' breach-of-contract exclusion. This, too, is inapplicable. The breach-of-contract exclusion exempts coverage for personal and advertising injury arising out of a breach of contract except "an implied contract to use another's advertising idea in your 'advertisement.'" (Doc. 22-2 at 18.) Defendants argue the exception to the exclusion could be applicable because they plan to argue in state court Bentley "impliedly contracted with Defendants to allow the use of Warehouse 215" and breached that implied contract. (Docs. 28 at 8; 29-1 at 106–108.) But the exception to the exclusion only covers "sums . . . that the insured"—not a third party—"becomes legally obligated to pay . . . because of 'personal and advertising injuries'" arising from breach of an implied contract (Doc. 22-2 at 18.) *See Keggi*, 13 P.3d

- 5 -

at 788 (Courts "construe provisions in insurance contracts according to their plain and ordinary meaning.").) Thus, although there may be an exception to the coverage exclusion for personal and advertising injuries arising from *defendants'* breach of an implied contract, there is no coverage for such injuries arising from Bentley's alleged breach.

Because Nationwide has established the intellectual property coverage exclusion applies and defendants have not shown an exception to the exclusion, Nationwide is not required to defend or indemnify defendants in the underlying litigation.

### b. Timing

Finally, defendants argue an insurer's duty to indemnify is not ripe until an actual finding is made against the insured. (Doc. 28 at 16.) Because Nationwide is covering Lennon and ALL's ongoing defense in state court, the question of the scope of Nationwide's obligations to defendants is not premature. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (holding that a "case or controversy" existed where insurer sought declaratory judgment addressing its indemnity obligations in pending state court suit against insured).

Arizona law does not require the resolution of an underlying suit before determining indemnity obligations on a motion for summary judgment. *See Twin City Fire Ins. Co. v. DanceIt! Studio LLC*, 714 F. Supp. 3d 1143, 1151–52 (D. Ariz. 2024) (finding language of insurance policy excluded insurer's duty to indemnify on summary judgment). And applicability of an insurance coverage exclusion is a matter of law, not a matter of fact as defendants argue. *See P.F. Chang's China Bistro, Inc. v. Fed. Ins. Co.*, No. CV-15-01322-PHX-SMM, 2016 WL 3055111, at *6 (D. Ariz. May 31, 2016) (resolving summary judgment motion on applicability of insurance policy clause as a "matter of law"); *Am. Fam. Mut. Ins. Co. v. Verdugo*, No. CV-14-02585-TUC-CKJ, 2016 WL 9458582, at *5 (D. Ariz. Mar. 21, 2016), *aff'd*, 691 F. App'x 387 (9th Cir. 2017) (same).

There are no remaining questions of fact because Bentley's claims necessarily "arise from" alleged violations of intellectual property rights excluded from the policies and the exclusions that apply to the duty to defend also apply to the duty to indemnify. (Doc. 22-2

at 18 ("This insurance, including any duty we have to defend 'suits,' does not apply to personal and advertising injury . . . [a]rising out of the infringement of . . . other intellectual property rights.").)

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 21) is **GRANTED**.

**IT IS FURTHER ORDERED** within seven days of this order defendant shall file a proposed form of judgment consistent with this order. That judgment must include language identifying each policy at issue.

Dated this 14th day of March, 2025.

Honorable Krissa M. Lanham
United States District Judge